11 So.2d 732

ROBINSON v. STATE.

I Div. 163.

Supreme Court of Alabama.

Jan. 28, 1943.

Rehearing Denied Feb. 18, 1943.

Wm. V. McDermott, H. M. Aldridge, and G. A. Tonsmeire, all of Mobile, for appellant.

Wm. N. McQueen, Atty. Gen., and John O. Harris and Walter W. Flowers, Asst. Attys. Gen., for the State.

LIVINGSTON, Justice.

The appellant, Curtis Robinson, was indicted, tried and convicted of the offense of having forcibly ravished Zeola Mae Armstrong, a woman, and sentenced to suffer the death penalty. One Henry Daniels, Jr., was indicted separately, tried separately, and convicted for the same offense. His appeal is presently pending in this court.

Appellant entered a plea of not guilty, and waived the drawing of a special venire for the trial of this cause. McSwean v. State, 175 Ala. 21, 57 So. 732; White v. State, 209 Ala. 546, 96 So. 709.

In his opening statement to the jury the solicitor for the State said: "I expect to show by the evidence that just prior to this transaction they (we interpolate Curtis Robinson and Henry Daniels, Jr.) entered into an agreement about 'getting a white woman' to have sexual intercourse with * * * at another time this defendant talked again to Henry Daniels about getting a white woman. * * * about another conversation this defendant had with another man about 'getting a white woman' and ravishing her. * * * This defendant had a conversation again on Texas and Dearborn Street about getting some white woman."

Appellant insists that the trial court committed error to reverse in overruling his separate objection to the foregoing separate statements.

The effect of our decisions on the question here presented is stated in the case of Wilkey et al. v. State ex rel. Smith, 238 Ala. 595, 192 So. 588, 589, 129 A.L.R. 549, as follows:

"In Loeb v. Webster, 213 Ala. 99, 104 So. 25, to unduly limit the opening statement of counsel was held to be error. In Birmingham Baptist Hospital v. Branton, 218 Ala. 464, 118 So. 741, it was held not to be improper to state the facts or to remark that the mother would suffer by baby's death. In Brown v. Leek, 221 Ala. 319, 128 So. 608, it was held that immaterial and prejudicial matter may not be introduced in opening statement of counsel, that the time, manner and character of said statement was within the discretion of the trial court. In Atlanta Life Ins. Co. v. Canady, 225 Ala. 377, 143 So. 561, it was held that opening statements may disclose the basis of the suit and the source of title. In Prudential Ins. Co. v. Calvin, 227 Ala. 146, 148 So. 837, it was held that counsel may, in good faith, show the theory on which the proceedings were had and state the facts of the res gestae.

"In Atlanta Life Ins. Co. v. Ash, 228 Ala. 184, 188, 153 So. 261, 264, this Court said: 'The right of counsel to make a preliminary or opening statement to the jury is fully recognized in this jurisdiction, but this right is not unlimited. The purpose and function of such a statement is to advise the jury of the facts relied upon to make up his right of action or defense, "to define the nature of the questions involved, and advise them of the issues to be tried so as to enable them to understand the case to be tried." Counsel, of course, may, in a reasonable way, outline what he expects to prove, unless it is manifest that such proof would be incompetent, or the offer or statement is made for the purpose of improperly influencing the jury. * * *' " See, also, 64 Corpus Juris p. 235, section 251; 38 Cyc. 1475.

The following rule was expressly approved in the case of Handley v. State, 214 Ala. 172, 106 So. 692, 694: "No Right to Rehearse Facts Which Cannot be Proved.—Counsel has no right, in his opening statement, to rehearse before the jury facts which he is not in a condition to prove. It is the duty of the judge to see that this rule is not overstepped, and therefore he has a right to ask the counsel if he means to prove what he has stated. As was well said by Mr. Justice Graves: 'The decisions unite in substantially denying the right to get before the jury a detail of the testimony expected to be offered, and especially any not positively entitled to be introduced, and deny the right to use it as a cover for any topics not fairly pertinent.' 1 Thompson on

Trials § 263." And in the same case, it was said: "Failure to prove a particular thing, proposed in good faith, will not ordinarily work a reversal. People v. Gleason, 127 Cal. 323, 57 P. 592."

■ It was neither necessary nor proper for the solicitor to detail the evidence by which he intended to prove his opening statement to the jury.

Specific supporting evidence is found in the signed confession of the defendant, admitted over his objection and exception. The confession is, in part, as follows:

"I have been knowing Henry Daniels, Jr., for about one week. He and I are good friends and go together. We have been working at Turner Terminal together.

"One occasion he and I talked about * * * some white woman. He said he would like to go with a white woman and I said I would like to go with one.

"He and I went to the C.I.O. hall yesterday about 9 P.M. on Elmira and Warren. This was about one hour before he and I attacked the white lady in the alley above named, about 50 feet north of Texas Street.

"We left the C.I.O. hall about 9:30 or 9:45 last night and went west on Elmira Street to the alley and turned south and went south in the alley to my house. We went into my house. We stayed there about 15 minutes and came out and went south, down the alley, towards Texas Street. My house is about one hundred feet from Texas Street and on the east side of the alley. When we got to the north side of Texas Street we looked towards Dearborn Street, which was about 125–150 feet from the north side of Texas Street. She was about 100 feet from us. It was dark but we could see that she was a white woman. We did not go out on the sidewalk, but just peeped around the fence. He, Henry Daniels, Jr., said here comes a white woman let us * * * her and I said 'you catch her' and he said 'alright and you grab hold of her too.' We then stood back in the alley and kept quiet until she got to about the center of the alley we jumped out and grabbed her from behind. Daniels put one arm around her neck and his other hand on her mouth and pulled her close to him. I grabbed her wrists. When we first grabbed her she said 'who is this that has got me.' We said nothing. She began to fight with her whole body, kicking, scratching and begged us to let her alone. We dragged her about fifty feet up the alley. He pulled one arm around her neck and I held her arms and got her on the ground on her back with her head towards the river. * * * When he got through, I told him to come hold her so I could * * * her. * * * When I got through I got up and both of us ran to Texas Street and then to Dearborn Street, and then we separated."

Laying aside for the moment the question of the admissibility of the confession as such, was the evidence tending to support the solicitor's opening statement admissible for any purpose? On the trial, the defendant denied all knowledge of, and participation in, the crime charged. Under such denial the intent and identity of the defendant as to the commission of the crime of rape against a female of another race, are material and important.

■ The general rule governing the admissibility of evidence of this character is stated in the case of Jackson v. State, 229 Ala. 48, 155 So. 581, 582, as follows: "Evidence of other and distinct criminal offenses, at other times and places, is admitted in evidence only in exceptional cases and for limited purposes. Among these are cases where such evidence may throw light on the motive, intent, scienter, or identity, and so tend to establish the guilt of the party of the offense for which he is being tried. The details of such other crimes are not admissible, except in so far as essential to disclose the motive or other matter for which it is admitted. Gassenheimer v. State, 52 Ala. 313; Ingram v. State, 39 Ala. 247, 84 Am.Dec. 782; Moore v. State, 10 Ala.App. 179, 64 So. 520; Davis v. State, 213 Ala. 541, 105 So. 677."

And in the case of Johnson v. State, 242 Ala. 278, 5 So.2d 632, 635, this Court said: "The case of Wilkins v. State, 29 Ala.App. 349, 197 So. 75, bears some analogy. And in Wilder v. State, 1 So.2d 317, the Court of Appeals had a similar question here presented. See, also, the recent United States Supreme Court case of Lisenba v. People of State of California, 314 U.S. [219] 62 S.Ct. 280, 86 L.Ed. [166]. The other offenses here shown were all of similar character, committed within the same territory and all within a period of eighteen days. It is to be noted also that in each instance the victim was a white woman, which bears significance in view of defendant's remark concerning white

woman as testified to by Mrs. Sloan, hereinafter set out. The only issue was one of identification, and under the principle of the above-noted authorities this proof was properly admitted." See, also, Wilkins v. State, 29 Ala.App. 349, 197 So. 75, and the authorities there cited for a full discussion of the principle involved.

■ The criminal assault by a negro man upon a white woman was an unusual and unnatural act, making competent the evidence indicated, illustrating the purpose of the two defendants to commit such a crime, and touching the question of their intent and identity.

The evidence being admissible, the opening statement of the solicitor was not an unnecessary, prejudicial and unwarranted appeal to race prejudice.

The rules governing the introduction in evidence of confessions of those charged with the commission of a crime are too well known and understood to need repetition here. Redd v. State, 69 Ala. 255; Newell v. State, 115 Ala. 54, 22 So. 572; McAlpine v. State, 117 Ala. 93, 23 So. 130; Plant v. State, 140 Ala. 52, 37 So. 159; Barddell v. State, 144 Ala. 54, 39 So. 975; Morris v. State, 25 Ala.App. 494, 149 So. 359.

■ We have carefully examined the evidence touching the question of a proper predicate for the admission of the confession in this case. It is our opinion that the evidence is sufficient to establish the fact that the confession was voluntary, and admissible, and there was no error in the action of the trial court in overruling defendant's objection to its introduction in evidence.

■ The undergarments worn by Zeola Mae Armstrong on the night of the assault and left in the alley and properly identified were admissible in evidence. Puckett v. State, 213 Ala. 383, 105 So. 211. The wearing apparel of the defendant, identified as that worn by him at the time of the criminal assault, was also admissible. Pate v. State, 150 Ala. 10, 43 So. 343. They were material by reason of the fact that the evidence tended to show that it had rained a short time before the assault occurred and the ground and grass in the alley were wet or damp, and the trousers were damp and soiled below the knees, and there were grass stains on both knees. The test or analysis made of the different and significant stains found on the front of defendant's trousers tended to show recent sexual intercourse. 22 Corpus Juris Secundum, Criminal Law, p. 1216, § 713; Rollings v. State, 160 Ala. 82, 49 So. 329; 16 Corpus Juris p. 620, section 1227. There was no error in allowing the solicitor for the State to recall State's witness Rollins, for the purpose of identifying the clothing worn by the defendant at the time the assault was committed.

■ One Louis Pezant was arrested shortly after the assault on Mrs. Armstrong. He was not indicted nor tried for the offense. What was said or done to him by the arresting officers was res inter alios acta, and the trial court was not in error in refusing to admit evidence concerning it. Pynes v. State, 207 Ala. 413, 92 So. 666.

■ Josephine Jones, a witness for the State, testified that she saw defendant in the house the morning after the assault, sitting on the side of the bed. In response to the question, "What did he say, if anything?" witness answered, "I said, Curtis, you ought to be ashamed to let all these boys be getting arrested for something they didn't do, and you ought to go and tell the truth about it. He said if I said anything about seeing them there or anything, he would fix me." The statement attributed to defendant is in no sense a confession of guilt, and was admissible without a predicate. Read v. State, 195 Ala. 671, 71 So. 96.

■ The charges or statement were of such character as to have called for a denial by the defendant. His silence, failure to deny the truth of the charges made, and the statement made by her, were all relevant evidence. These were circumstances, acts and words for the jury to consider in passing upon his guilt or innocence. Jackson v. State, 213 Ala. 143, 104 So. 220; Davis v. State, 131 Ala. 10, 31 So. 569; Clark v. State, 240 Ala. 65, 197 So. 23.

■ And for like reasons, the statements of the witness Rollins to the effect that before defendant confessed he was told that his (defendant's) wife had told the officers that defendant had instructed her to say that she had made the scratches on his neck.

■ In his closing argument, the solicitor for the State made the following statement: "In order to try and prove

690

an alibi, he says he was in bed in the arms of his wife, and where is his wife?" Appellant's objection to the foregoing statement was sustained, whereupon the solicitor made the further statement: "I will answer his statement by saying that we did subpoena her, but by the Alabama Act of 1915 [p. 942], we cannot compel a wife to testify against her husband." No objection was interposed to the last statement. The statements are not such as come within the rules laid down in the case of Simon v. State, 181 Ala. 90, 61 So. 801, and cases of like character; and this case is not due to be reversed because the trial court did not ex mero motu, enter a mistrial.

■ Dr. William H. Newman was called as a witness for the State. He was qualified as an expert. There was no error in allowing Dr. Newman, who examined Mrs. Armstrong shortly after the assault, to state in effect to the jury that, in his opinion, the injuries to her eye, face and throat could have been caused by having been struck with a hand or fist, and by having been choked. Thaggard v. Vafes, 218 Ala. 609, 119 So. 647; Wallace v. State, 16 Ala.App. 451, 78 So. 714; 32 Corpus Juris Secundum, Evidence, pp. 242, 243, § 534(2).

There are other objections and exceptions relative to the admission and rejection of evidence. We have carefully examined all of them, and there is no reversible error shown. We do not feel that they justify separate treatment here.

■ Refused charges one and two are general affirmative charges and were refused without error. Refused charge three, on the presumption of defendant's innocence was fully and fairly covered in the court's oral charge, and no reversible error intervened in its refusal. For like reasons, the court did not commit reversible error in refusing appellant's written charges 4, 5, and 6.

■ Appellant's refused charge 7 was condemned in Ex parte Davis et al., 184 Ala. 26, 63 So. 1010; McDowell v. State, 238 Ala. 101, 189 So. 183; Wilson v. State, ante, p. 1, 8 So.2d 422.

The record contains two refused written charges numbered 8. Each charge is nothing more than a charge on reasonable doubt and was covered by the court's oral charge.

■ Charge 9 was properly refused on account of its misleading tendencies. Farrish v. State, 63 Ala. 164.

■ Refused charge 11 is misleading and invades the province of the jury. It was properly refused. Carpenter v. State, 98 Ala. 31, 13 So. 534.

■ Refused charge 12 restricts the measure of proof required to convict to that furnished by the prosecution, instead of to the whole evidence in the case, and was properly refused. On cross-examination, appellant gave testimony the tendency of which was incriminating. Sanders v. State, 134 Ala. 74, 32 So. 654; McCoy v. State, 170 Ala. 10, 54 So. 428; Howerton v. State, 191 Ala. 13, 67 So. 979.

Refused charge 13, if not subject to the same criticism directed against charge 12, was fully covered by the oral charge.

Refused charges 14 and 15, if not defective (a question we do not reach), were substantially covered by the court's oral charge, and their refusal did not constitute reversible error.

Appellant insists that the verdict of the jury is contrary to the evidence, and that his motion for a new trial should have been granted.

■ We have carefully considered the testimony of the prosecutrix, Mrs. Armstrong. She is positive in her identification of defendant as one of her assailants. She immediately reported the assault to a woman known to her as "slim," who lived near the scene of the crime. She then proceeded to a drug store, a short distance away, and telephoned police officers.

The testimony of other witnesses corroborate the testimony of prosecutrix, as well as the statements contained in the written confession of defendant.

Josephine Jones also testified that she saw defendant and Henry Daniels, Jr., running away from the place where the assault occurred.

Our careful consideration of the evidence convinces us that the trial court correctly refused to set aside the verdict of the jury.

With reference to the confession in evidence, we make the same observation as was made in the case of Johnson v. State, 242 Ala. 278, 5 So.2d 632, 635, 636, as follows:

"In the cases noted the Supreme Court of the United States reached the conclusion that the confessions were clearly shown to have been involuntarily obtained and in addition constituted a vital chain in the State's case for conviction. Indeed these authorities are rested upon the doctrine that the accused was in this manner deprived of due process of law as guaranteed by the Federal Constitution. Illustrative is the expression of the court in Brown v. Mississippi, supra (297 U.S. [278], 279, 56 S.Ct. [461], 465, 80 L.Ed. 682): 'It would be difficult to conceive of methods more revolting to the sense of justice than those taken to procure the confessions of these petitioners, and the use of the confessions thus obtained as the basis for conviction and sentence was a clear denial of due process.'

"Nothing similar to such a situation is here presented."

It necessarily follows from the foregoing that the judgment of the circuit court is affirmed.

Affirmed.

All the Justices concur.